**GOLDBERG, MILLER & RUBIN P.C.**
**BY:** Matthew Moroney, Esquire
Harlan Schreiber, Esquire
1501 Broadway, Suite 715
New York, NY 10036
(215) 735-3994

*Counsel for Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company*
*State Farm Guaranty Insurance Company and State Farm Fire and Casualty Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INDEMNITY COMPANY, STATE FARM GUARANTY INSURANCE COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY | Index No.: 23-7369 |
| Plaintiffs, | **COMPLAINT** |
| -against- | |
| ANJANI SINHA MEDICAL, P.C. | |
| Defendants. | |

Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company (collectively, "State Farm Companies" or "Plaintiffs"), by and through their counsel, Goldberg, Miller & Rubin, P.C., hereby allege as follows:

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment in which the State Farm Companies seek a determination that they are not legally obligated to pay certain bills submitted by the Defendant, Anjani Sinha Medical P.C. ("Sinha Medical") for highly questionable medical services

that allegedly were rendered to individuals who were involved in automobile accidents and eligible for coverage under insurance policies issued by the State Farm Companies in New York. As described below, because Sinha Medical failed to provide necessary documents and information to properly verify the claims it submitted, Sinha Medical failed to meet a condition precedent to coverage under the insurance contracts and violated its obligations under New York's No-Fault Laws, and therefore, the claims are not compensable. The claims at issue in this declaratory judgment action are identified on **Exhibit "A".**

## PARTIES

2.  The State Farm Companies are corporations organized under the laws of Illinois with a principal place of business in Illinois. The State Farm Companies are duly authorized to issue automobile insurance policies in the State of New York.

3.  Sinha Medical is a New York professional service corporation. At all relevant times, Sinha Medical submitted claims and bills to the State Farm Companies for examinations and surgeries. The listed owner of Sinha Medical is Anjani Sinha, M.D. ("Dr. Sinha"). Sinha Medical purportedly provides services at various locations in the New York Metropolitan area.

## JURISDICTION AND VENUE

4.  Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this claim because the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

5.  Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because a substantial part of the events giving rise to the claims occurred here.

**I.    An Overview of the No-Fault Laws**

6.  The State Farm Companies underwrite automobile insurance in the State of New York.

7. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.) (collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to insureds.

8. No-Fault Benefits include up to fifty thousand dollars ($50,000.00) per insured for necessary expenses that are incurred for healthcare goods and services. New York's No-Fault Laws are designed to ensure that individuals who are injured in motor vehicle accidents have an efficient mechanism to receive and pay for necessary health care services.

9. Under the No-Fault Laws, insureds can assign their right to No-Fault benefits to professional health service providers, as long as the providers meet applicable New York State and local licensing requirements to perform such services in New York. With a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form approved by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician or Other Provider of Health Service" or, more commonly, as an "NF-3"). Once the healthcare provider takes an assignment of an insured's rights, the provider cannot seek to recover payment from the insured. Instantly, the Defendants received assignments for the claims and bills at issue in this lawsuit.

10. Pursuant to the No-Fault Laws, health care providers that seek to collect No-Fault benefits from New York automobile insurers must be in compliance with all applicable New York licensing laws and must be owned and controlled by licensed health care providers.

11. In addition, healthcare service providers are not eligible to receive No-Fault Benefits if they engage in self-referrals, kickbacks, or other illegal payments in violation of New

York's Public Health Law. Healthcare providers are also not entitled to collect for healthcare services that are not medically necessary, are provided by independent contractors, and/or are based on illegitimate and/or fraudulent examinations/ testing services and/or the billed amounts are excessive.

## II. An Overview of New York's No-Fault Regulations Pertaining to Verification of Claims

12. The No-Fault Laws obligate healthcare providers, which seek payment of No-Fault Benefits, to provide insurers with additional verification in order to establish proof of their claims.

13. The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 includes a specific section entitled "Conditions", which states in part, that "upon request by the Company, the eligible injured person or that person's assignee . . . shall (b) as may reasonably be required, submit to an examination under oath by any person named by the Company, and shall subscribe to same . . . , and (d) provide any other pertinent information that may assist the Company in determining the amount that is payable."

14. The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 also states that "No action shall lie against the Company, unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage."

15. The proof of claim requirement in the No-Fault policy endorsement, 11 N.Y.C.R.R. § 65-3.5(b) states in relevant part:

> Subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms. Any requests by an insurer for additional verification need not be made on any prescribed or particular form . . .

16. Additionally, 11 N.Y.C.R.R. § 65-3.5(c) states in relevant part:

> The insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested.

Moreover, 11 N.Y.C.R.R. § 65-3.5(o) states in relevant part:

> An applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply.

17. An insurer is entitled to any information that is necessary for the insurer to determine whether the claim submitted by the healthcare provider is payable. If a healthcare provider fails to comply with a verification request in relation to a claim/bill, then that claim/bill is non-compensable.

18. The issues for which additional verification can be properly sought are not limited to, and can include, for example:

> (i) whether the services provided by the healthcare provider were medically necessary, and/or the billed amounts are excessive and/or whether the services were the product of self-referrals, kickbacks, or other inappropriate financial considerations and/or whether the services were provided by employees or independent contractors.

### III. Factual Allegations and the State Farm Companies' Reasonable Basis for Requesting Verification

19. Pursuant to New York's No-Fault regulations, the State Farm Companies made verification requests to Sinha Medical because several issues of concern arose when evaluating the claims submitted by Sinha Medical. Specifically, prior to seeking additional verification from Sinha Medical, the State Farm Companies conducted an investigation into the claims submitted by

Sinha Medical, including investigating the appropriateness of the treatment, examinations and related billing.

20.    As background, Sinha Medical was reportedly incorporated in May 2019 by Dr. Sinha.  Dr. Sinha graduated from medical school in 1972.  In 2017, he retired from the practice of orthopedic surgery, and moved to Florida.  Dr. Sinha indicated that he chose to end his retirement when he decided to start Sinha Medical and move back to the New York Metropolitan area.  Since then, Sinha Medical has submitted claims to the State Farm Companies for purported examinations and arthroscopic surgeries provided to individuals who were involved in motor vehicle accidents.

21.    Sinha Medical operates at six (6) or more clinics in the New York Metropolitan area.  Numerous professional corporations operate at these clinics and cater to patients who were in motor vehicle accidents and allegedly provide chiropractic, acupuncture, and other purported services to these patients.  As per Dr. Sinha, either himself and/or a nurse practitioner (also referred to as an "extender") travel to these clinics to evaluate and provide orthopedic consultations for patients who are already treating at these clinics.

22.    Initially, there is a concern that Sinha Medical pays for access to the patients who are already treating at these clinics.  As per Dr. Sinha, Sinha Medical pays "rent" for access to these patients at these clinics.  Dr. Sinha claims that individuals associated with these various clinics contacted him out of the blue to enter into these arrangements for Sinha Medical to present to these clinics in exchange for purported rental payments.  In spite of this, the circumstances of how these arrangements were entered into are questionable, including whether someone else on behalf of Sinha Medical was involved.  These "pay for access" arrangements have been issues of concern throughout the New York Metropolitan area as they can often be disguised kickback

arrangements and these clinics are often fraudulently controlled by laypersons rather than licensed healthcare providers.

23. Although he claims new patients are obtained through referrals (and he claims that the business of Sinha Medical is dependent on these referrals), Dr. Sinha claimed to not know the names of any of the healthcare provider at these clinics who reportedly referred patients to him. Sinha Medical does not receive notice of which specific patients that Dr. Sinha and/or his extender will evaluate at each clinic beforehand. Rather, when Dr. Sinha and/or his extender arrives at a clinic, the front desk staff at the clinics funnel in patients to be evaluated. Dr. Sinha estimated that ten (10) to twenty (20) patients are evaluated on each visit at one of these clinics. It is questionable that Sinha Medical would be provided this volume of patients absent any monetary payments.

24. After paying for access to the patients at these clinics, it appears that Sinha Medical, through Dr. Sinha and/or his extender, recommends arthroscopic surgery, for knee(s) and/or shoulder(s), on a high percentage of these patients. Consequently, there are concerns over the necessity of these services, as well as concerns about potential improper payments for patient access.

25. The need for these arthroscopic surgeries is based, at least in part, on the purported examination findings documented in the records of Sinha Medical. When the records for different patients are reviewed collectively, troubling patterns emerge of Sinha Medical documenting remarkably similar complaints and physical examination findings for these different patients. In surveying the records of different patients, one would expect to find more variation in the findings, considering these patients are of varying ages, have varying health conditions, were in different car accidents of varying severity, and were seen by Dr. Sinha and/or his extender at varying intervals after their accidents, among other variables.

26. The operative reports of Sinha Medical also reveal concerning patterns. The operative reports are extraordinarily similar between each shoulder and knee procedure. While similarities can be expected, the procedures performed and the documented intra-operative findings should have a higher degree of variability than what is documented by Sinha Medical.

27. Dr. Sinha indicated that Sinha Medical uses a transcription service to prepare these reports. Dr. Sinha and/ or his extender's handwritten notes are transcribed into reports using templates with preset language. There is a concern that these reports may not document accurate and authentic information, but rather preset findings.

28. Based on the above, the State Farm Companies' investigation raised questions as to: (i) whether the examinations and arthroscopic services provided by Sinha Medical to State Farm insureds were necessary and whether the services were based on authentic and legitimate findings; and (ii) whether Sinha Medical directly or indirectly received and/or provided some form of financial or other consideration for referrals in violation of New York law and/or whether there were self-referrals that violated New York's Public Health Law. The State Farm Companies, therefore, had, and continue to have, a reasonable basis to request additional verification from Sinha Medical in order to determine whether or not Sinha Medical is eligible to collect No-Fault Benefits pursuant to 11 N.Y.C.R.R. §65-3.16(a)(12) and Insurance Law §5102(a)(1).

29. Because of the troubling issues identified, the State Farm Companies requested basic documents and information that were necessary for numerous reasons, including but not limited to (i) to evaluate the necessity and appropriateness of the services billed for and whether the services were based on authentic and legitimate findings, and (ii) to evaluate whether there were kickbacks, fee splitting and/or financial considerations that influenced patient care.

30. As an illustrative example of how these documents are relevant and necessary, there are serious concerns as to who Sinha Medical pays for the purported rental of space, how much is being paid, and whether Sinha Medical is engaging in kickbacks in exchange for the referral of patients. The State Farm Companies therefore requested copies of these payments for purported lease payments, along with tax records to see if and how these payments are declared.

31. Additionally, because there is a concern of the authenticity, legitimacy, and accuracy of the documented findings in the reports of Sinha Medical, the State Farm Companies requested 1) the handwritten notes of Dr. Sinha and his extender that were used by the transcriptionist to create the reports, and 2) the templates with preset language that were utilized in creating the reports. Considering the extraordinarily similar reports from patient to patient, a comparison of these two (2) sets of documents is necessary to determine whether the documented findings are authentic and accurate.

32. It also should be noted that there are occasions where Dr. Sinha's extender evaluates patients at the clinics and recommends arthroscopic surgeries. Dr. Sinha first meets these patients at the surgery center just before the procedure. Although Dr. Sinha claims he performs some form of an evaluation right before the procedure to confirm the procedure is necessary, Sinha Medical has not provided any documentation of these purported evaluations.

33. Sinha Medical, however, failed to comply with these verification requests by refusing to provide all of the requested documents.

**IV.    Defendant's Failure to Comply with the State Farm Companies' Requests for Additional Verification**

34. The State Farm Companies made formal requests for additional verification to Defendant in connection with the claims listed on **Exhibit "A"**. These requests were made in

accordance with the insurance policies under which the claims were submitted, and pursuant to the No-Fault Laws.

35. Each request was timely made and based upon the application of objective standards justifying the information sought by the State Farm Companies that would address the concerns summarized above and would allow the State Farm Companies to properly evaluate the claims.

36. The failure and/or refusal to provide additional verification constitutes a material breach of the State Farm Companies' insurance policies and the No-Fault Laws under which the claims have been made and, as such, relieves the State Farm Companies from any obligation to pay Defendant on any of the claims.

37. In each instance where the Defendant refused to provide proper verification, the State Farm Companies issued a timely denial on the prescribed NF-10 form stating in relevant part that the Defendant failed to comply with its obligation to present a proper proof of claim, and that the Defendant's claim was denied because he failed to satisfy a condition of coverage.

38. All of the State Farm Companies' denials of Defendant's claims and charges were timely, proper, and consistent with the No-Fault Laws. The chart annexed hereto as **Exhibit "A"** identifies each claim where verification was requested by State Farm.

## FIRST CAUSE OF ACTION
**Against Sinha Medical**
**(Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202)**

39. Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 38 of this Complaint as if fully set forth at length herein.

40. There is an actual case in controversy between the State Farm Companies and Defendant regarding more than $1,000,000 in billing for healthcare services that has been submitted to the State Farm Companies. The claims in dispute are listed on **Exhibit "A".**

41. Defendant has no right to receive payment for any of the claims listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and therefore, breached a condition of coverage and violated its obligations under the No-Fault Laws.

42. Accordingly, the State Farm Companies request a judgment declaring that Sinha Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and thus breached a condition of coverage and violated its obligations under the No-Fault Laws.

**WHEREFORE**, the State Farm Companies respectfully request that this Court enter a declaratory judgment in their favor and against Sinha Medical, as follows:

- On the First Cause of Action, a declaration that Sinha Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A."**

### SECOND CAUSE OF ACTION
**Against Sinha Medical**
**(Declaratory Relief Under CPLR § 3001)**

43. Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 42 of this Complaint as if fully set forth at length herein.

44. There is an actual case in controversy between the State Farm Companies and Defendant regarding more than $1,000,000 in billing for healthcare services that has been submitted to the State Farm Companies. The claims in dispute are listed on **Exhibit "A".**

45. Defendant has no right to receive payment for any of the claims listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and therefore breached a condition of coverage and violated its obligations under the No-Fault Laws.

46. Accordingly, the State Farm Companies request a judgment declaring that Sinha Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and thus breached a conditions of coverage and violated its obligations under the No-Fault Laws.

**WHEREFORE**, the State Farm Companies respectfully request that this Court enter a declaratory judgment in their favor and against Sinha Medical, as follows:

- On the Second Cause of Action, a declaration that Sinha Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A."**

Dated: October 3, 2023

Respectfully submitted,

GOLDBERG, MILLER & RUBIN, P.C.

By: _____
Matthew Moroney, Esq.
Harlan Schreiber, Esq.
*Counsel for Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company and State Farm Fire and Casualty Company*